IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BENJAMIN GOODMAN and ADAM BLOOM, )
                                      Plaintiffs, )
      v.                          )   C.A. No.
UNIVERSITY OF DELAWARE, )
                                      Defendant. )

**VERIFIED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF AND DAMAGES PURSUANT TO 42 U.S.C. §1983 AND 1988 AND STATE LAW**

**JURISDICTION**

1. This action seeks to vindicate rights protected by the First and Fourteenth Amendments to the Constitution of the United States and is brought under 42 U.S.C. §1983. The Court has jurisdiction over this civil rights action pursuant to 28 U.S.C. §§1331(a) and 1343(a)(3) and (4). The Court has jurisdiction pursuant to 28 U.S.C. §§2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

**PARTIES**

2. Plaintiffs Benjamin Goodman and Adam Bloom, residents of Newark, Delaware, are adult males who are enrolled as students at the University of Delaware.

3. Defendant the University of Delaware ("UD") is a public, state-sponsored educational institution organized and existing pursuant to Delaware law, specifically 14 *Del. C.* §5101, *et seq*.

**BACKGROUND**

4. UD publicly presents itself as a staunch supporter of freedom of speech and the First Amendment. For example, in 2006, when the Wilmington News Journal reported that a UD

graduate student was alleged to be involved with a white supremacist hate group, the News Journal quoted then-UD President David P. Roselle as saying, "It is a personal affront when persons with hateful beliefs espouse those beliefs, insist upon their right to make public displays of their beliefs or otherwise attempt to spread their venom. But, a fundamental tenet of our nation is that my objection or, as in this case, the University's objection, is not sufficient reason to deny the right of free speech."

5. Similarly, in 2007, when the Wilmington News Journal reported that students attended a party wearing costumes deemed offensive, the News Journal quoted then-Pres. Roselle as stating that "First Amendment protections are sometimes a little bit inconvenient for us when we want to perhaps punish someone who we think by all rights deserves to be punished. But it's the law of the land, and it's a wonderful law and one we all should happily abide by. So it is what it is, and you have to deal with it."

6. Section 3 of the UD Faculty Handbook states, in pertinent part, that "Members of the University Community are free to examine and to discuss all questions of interest to them and to express opinions publicly and privately."

7. In connection with the 2011 Homecoming festivities at UD, Mr. Goodman, Mr. Bloom and Jordan Meyer created and sold t-shirts containing the phrase "U can suck our D." Mr. Goodman sold approximately 1,500 of these t-shirts and other paraphernalia, resulting in a profit of $12,000. Although these items were in plain view on campus, UD never objected to the distribution and sale of these items.

8. Buoyed by their success in 2011, in anticipation of the 2012 Homecoming activities, Mr. Goodman ordered 2,000 t-shirts, 500 pairs of sunglasses, and 500 can cozies bearing the following designs:






9. The vendor retained by Mr. Goodman billed $9,250 for these items.

10. On or about September 11, 2012, Mr. Goodman caused a mass email to be sent to prospective purchasers, advising them that the items would go on sale on Wednesday, September 12, at two locations: 28 Haines Street and 6 Prospect Street, both of which locations are off of the UD campus. In addition, Mr. Goodman caused a notice of the sale to be posted on Facebook.

11. Later on September 11, 2012, Mr. Goodman received an email from Mr. John Brennan, Director, Office of Communications and Marketing for UD. The email stated in part:

> It has come to the attention of OCM of your intentions to create and distribute
> shirts along with other paraphernalia the bear resemblance to the University of

4

> Delaware brand and trademarks. The design is in violation of the rules regarding use of the University's marks. Michael Gilbert, vice president for student life, has been consulted and is in agreement that you will be referred to the Office of Student Conduct if you or your group proceeds with the sale, distribution or creation of these unauthorized items."

The email did not identify the specific registered trademarks which UD claimed were infringed by Mr. Goodman's designs. However, in a later email from Lindsey Crawford O'Mara, Esq., Associate Counsel for the University of Delaware dated November 15, 2012, Ms. O'Mara stated that:

> The t-shirt design infringes on the interlocking UD trademark, which is registered with the State of Delaware and to which the University has common law rights.

12. In response to Mr. Brennan's email, Mr. Goodman spoke with Michael Gilbert of the Office of Student Conduct to inquire about the risk of disciplinary action if he sold the goods. Mr. Gilbert told him that there would be disciplinary action if he proceeded, and that since he had been warned in advance, any sanction would be severe.

13. As a result, Mr. Goodman and Mr. Bloom were inhibited from selling the goods for fear of disciplinary action, leaving them with a bill of $9,250 for manufacturing the goods, and lost profits of approximately $25,000.

## **COUNT I**
(First Amendment to the Constitution of the United States)

14. Plaintiff re-alleges and incorporates the allegations contained in paragraphs 1-13 above as if fully set forth herein.

15. The free speech rights under the First Amendment of students at public universities such as UD are the same as those of any member of the community.

16. The goods at issue do not infringe UDs trademarks, in that the letters are not interlocking, do not use the same typeface or font or colors, and include additional words which

make clear that the context is humor or jest and not sponsored by UD. Alternatively, to the extent they resemble UD's trademarks, such use is fair use as parody, involving the juxtaposition of the irreverent presentation of the trademark (or a suggestion thereof) in a crude or risque setting with the idealized image created by UD, and/or expressive or nominative use.

17. The designs are not likely to cause consumer confusion. No reasonably prudent person would believe that UD would promote itself with the phrase "U can suck our D" or authorize its use.

18. UD improperly used the threat of disciplinary proceedings to enforce questionable trademark rights.

19. In the absence of a valid claim of trademark infringement, the threat of disciplinary proceedings was for the purpose of intimidation and had the effect of chilling Mr. Goodman's and Mr. Bloom's free speech and commercial speech rights in violation of the First Amendment.

20. Mr. Goodman and Mr. Bloom seek a declaration that their goods do not infringe UD's trademark, and that proposed disciplinary or other action based on such alleged infringement unlawfully chilled their free speech rights, and an injunction against such action against them in the future.

## **COUNT II**
(Tortious Interference with Prospective Business Relationships)

21. Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-20 above as if fully set forth herein.

22. Based on the previous year's successful sales, Mr. Goodman and Mr. Bloom had a reasonable expectation of equaling or exceeding sales of like goods for Homecoming 2012.

23. UD interfered with such sales by intimidating Mr. Goodman and Mr. Bloom from selling the goods through the threat of academic discipline.

24. As a result of UD's wrongful, heavy-handed coercion, Mr. Goodman and Mr. Bloom were put in fear of suspension, expulsion or other stigmatic discipline, and so did not sell the goods, leaving them responsible for the costs incurred in manufacturing the goods.

24. Mr. Goodman and Mr. Bloom seek damages for lost sales in the amount of $35,000.

## COUNT III
(Economic Duress)

25. Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1-24 above as if fully set forth herein.

26. Mr. Goodman and Mr. Bloom were the victims of a wrongful and unjustified threat of academic discipline for an alleged trademark infringement.

27. The fear of academic punishment deprived them of unfettered will.

28. As a consequence, Mr. Goodman and Mr. Bloom were compelled to give up their right to sell their goods for the sole purpose of protecting their academic standing.

29. As a result of UD's duress, Mr. Goodman and Mr. Bloom seek damages in the amount of $35,000.

WHEREFORE, plaintiffs Benjamin Goodman and Adam Bloom respectfully request that the Court enter an Order granting judgment in their favor and:

1. Declaring that the University of Delaware violated their First Amendment rights by threatening academic disciplinary action for exercising legitimate free speech rights;

2. Enjoining the University of Delaware from pursuing any academic disciplinary action arising from the sale of the t-shirts and related goods;

7

3. Awarding damages to Mr. Goodman and Mr. Bloom in the amount of $35,000.

4. Awarding Mr. Goodman and Mr. Bloom their costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988; and

5. Awarding such other and further relief as the Court deems just and equitable.

    /s/ David L. Finger_____
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange Street, 7th floor
Wilmington, DE 19801-1186
(302) 573-2525
Attorney for plaintiffs Benjamin Goodman and Adam Bloom

Dated: December 12, 2012

## VERIFICATION

I, Benjamin Goodman, hereby declare under penalty of perjury, that the facts stated in the foregoing Complaint are true and correct.

Executed on December 12, 2012.

_____
Benjamin Goodman

## VERIFICATION

I, Adam Bloom, hereby declare under penalty of perjury, that the facts stated in the foregoing Complaint are true and correct.

Executed on December 12, 2012.

_____
Adam Bloom